

THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No.   16-24661-TJC |
| Essex Construction, LLC, | * | Chapter   11 |
| Debtor | * | |
| * * * * * * * * | * | |
| Firstrust Bank, | * | |
| Plaintiff | * | |
| vs. | * | Adversary No.   17-00156 |
| Industrial Bank, | * | |
| Defendant | * | |
| * * * * * * * * * * * * * * | | |

## MEMORANDUM OF DECISION

Before the court are cross-motions for summary judgment filed by defendant Industrial Bank and plaintiff Firstrust Bank. ECF 7, 11. As of the petition date, both banks held perfected security interests in all of the assets of debtor Essex Construction, LLC, with Industrial Bank's security interest being senior to that of Firstrust. Industrial Bank's financing statement lapsed post-petition on February 13, 2017, when it failed to file timely a continuation statement. Firstrust argues that, as a result of the lapse, Industrial Bank's lien ceased to be perfected and now Firstrust, rather than Industrial Bank, holds the first priority position in the debtor's assets.

1

Industrial Bank disagrees, and argues that in bankruptcy, liens are fixed as of the petition date, and therefore the post-petition lapse in its financing statement does not alter its senior position.

For the reasons below, the court concludes that the post-petition lapse of Industrial Bank's financing statement did not result in Firstrust becoming the senior security interest holder. The court therefore will grant Industrial Bank's motion for summary judgment and deny Firstrust's motion.

The court has jurisdiction over this matter under 28 U.S.C. §§1334 and 157(b) and Local Rule 402 of the United States District Court for the District of Maryland. This court has authority to enter a final judgment under 28 U.S.C. § 157(b)(2)(K) and (O) and consistent with the standards of *Stern v. Marshall*, 564 U.S. 462 (2011).

Statement of Undisputed Material Facts

On November 4, 2016, the debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On December 5, 2016, the United States Trustee filed a motion to appoint a Chapter 11 trustee, or to convert the case to Chapter 7. ECF 70 (16-24661). Ultimately, the debtor consented to the appointment of a trustee and the court confirmed the appointment of Bradford Englander as the Chapter 11 trustee on March 21, 2017. ECF 288 (16-24661).

Both Industrial Bank and Firstrust made prepetition loans to the debtor secured by all of the debtor's assets. Industrial Bank loaned the debtor $250,000, evidenced by a promissory note and a loan and security agreement dated February 3, 2012. Industrial Bank asserts that the outstanding balance was $289,985.83 as of the petition date. *See* Claim No. 6 (16-24661).

Industrial Bank recorded its UCC-1 financing statement on February 13, 2012, covering "all of the debtor's assets." ECF 7-1. There is no dispute that the security agreement grants Industrial Bank a lien on all of the debtor's assets and the security interest was perfected as of the

petition date.  Industrial Bank recorded a UCC-3 continuation statement on February 22, 2017, more than five years after it recorded the original UCC-1 financing statement.  ECF 7-2.

Firstrust made several loans to the debtor.  The first loan was made on April 22, 2014, for $1,260,000, evidenced by a promissory note and loan agreement.  ECF 1-1.  The second Firstrust loan was made on April 22, 2014, for $3,240,000, also evidenced by a promissory note and loan agreement.  ECF 1-2.  Firstrust asserts a total claim, as of the petition date, of $5,174,104.  *See* Claim No. 13 (16-24661).

Firstrust recorded its UCC-1 financing statements on May 8, 2014.  The UCC-1 financing statements cover "all of the debtor's personal property."  ECF 1-15.  There is no dispute that the security agreement grants Firstrust a lien on all of the debtor's assets and the security interest was perfected as of the petition date.

The Chapter 11 trustee is undertaking an orderly liquidation of the debtor's assets.  He reports that the proceeds from the liquidation will not be sufficient to pay the liens of the banks in full.  Accordingly, the relative priority between the banks' liens will have significant consequences to the banks' recoveries.

Conclusions of Law

The motion is governed by Federal Rule of Civil Procedure 56, made applicable here by Federal Rule of Bankruptcy Procedure 7056.  A court may award summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Here, the parties agree that the material facts are not in dispute and the cross-motions raise purely legal issues, and therefore summary judgment is appropriate.

Other than exceptions not pertinent here, under the Uniform Commercial Code adopted in Maryland, "a filed financing statement is effective for a period of five years after the date of filing." Md. Code Ann., Com. Law §9-515(a) (LexisNexis 2018).

> The effectiveness of a filed financing statement lapses on the expiration of the period of its effectiveness unless before the lapse a continuation statement is filed pursuant to subsection (d). Upon lapse, a financing statement ceases to be effective and any security interest or agricultural lien that was perfected becomes unperfected unless the security interest is perfected otherwise. If the security interest or agricultural lien becomes unperfected upon lapse, it is deemed never to have been perfected as against a purchaser of the collateral for value.

Com. Law §9-515(c).[1]  A bank that extends credit and obtains a voluntary security interest is a "purchaser of the collateral for value" within the meaning of § 9-515(c).  §1-201(29).[2]

A "continuation statement may be filed only within six months before the expiration of the five-year period . . . ." §9-515(d).  The consequence of a lapse in a financing statement of a senior perfected security interest in relation to a junior perfected security interest is explained in the Comments to the UCC:

> 3. Lapse. When the period of effectiveness under subsection (a) or (b) expires, the effectiveness of the financing statement lapses. The last sentence of subsection (c) addresses the effect of lapse. The deemed retroactive unperfection applies only with respect to purchasers for value; unlike former Section 9-403(2), it does not apply with respect to lien creditors.
>
> Example 1: SP-1 and SP-2 both hold security interests in the same collateral. Both security interests are perfected by filing. SP-1 filed first and has priority under §9-322(a)(1). The effectiveness of SP-1's filing lapses. As long as SP-2's security interest remains perfected thereafter, SP-2 is entitled to priority over SP-1's security interest, which is deemed never to have been perfected as against a purchaser for value (SP-2). See § 9-322(a)(2).

---

[1] Unless otherwise noted, all statutory references herein are to the UCC as adopted in Maryland.
[2] Section 1-201(29) provides that " 'Purchase' means taking by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, or any other voluntary transaction creating an interest in property."

§9-515 cmt. 3.  The result differs if the junior interest holder is a "lien creditor," a term that includes a bankruptcy trustee:[3]

> Example 2: SP holds a security interest perfected by filing. On July 1, LC acquires a judicial lien on the collateral. Two weeks later, the effectiveness of the financing statement lapses. Although the security interest becomes unperfected upon lapse, it was perfected when LC acquired its lien. Accordingly, notwithstanding the lapse, the perfected security interest has priority over the rights of LC, who is not a purchaser. See § 9-317(a)(2).

*Id.*

The parties agree on the effect of much of the foregoing provisions of the UCC.  There is no dispute that, as of the petition date, each bank held a perfected security interest in all assets of the debtor, and that Industrial Bank's security interest was senior to that of Firstrust.  Industrial Bank concedes that it did not file a continuation statement on or before February 13, 2017, the fifth anniversary of recording its original UCC-1 financing statement.  The parties also agree that, outside of bankruptcy, the failure of Industrial Bank to file timely a continuation statement would cause a lapse in the effectiveness of its financing statement, and would result in Firstrust taking the senior secured position.  This is because the parties agree that Firstrust is a "purchaser of the collateral for value" within the meaning of §9-515(c).  Further, the parties agree that, outside of bankruptcy, although Industrial Bank's security interest would become junior to Firstrust's position, it would not lose its security interest entirely as a result of the lapse.  This is the result under §9-515(c), which provides that the effectiveness of the financing statement lapses, but the underlying security interest is not lost.  No other creditor claims a lien in the debtor's assets arising either before or after the lapse.

---

[3] A "lien creditor" means: (A) A creditor that has acquired a lien on the property involved by attachment, levy, or the like; (B) An assignee for benefit of creditors from the time of assignment; (C) A trustee in bankruptcy from the date of the filing of the petition; or (D) A receiver in equity from the time of appointment." §9-102(53).

The dispute is whether the foregoing application of the UCC should be different because the debtor was the subject of a Chapter 11 proceeding when the lapse occurred. It is well established that "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States,* 440 U.S. 48, 55 (1979). *See also*, *Am. Bankers Ins. Co. of Florida v Maness*, 101 F.3d 358, 363 (4th Cir. 1996) ("while federal law creates the bankruptcy estate, *Butner* and the cases following it establish that state law, absent a countervailing federal interest, determines whether a given property falls within this federal framework."). This principle applies to security interests: "The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgage in rents earned by mortgaged property." *Butner,* 440 U.S. at 55. Thus, in the absence of some controlling federal interest, the debtor's bankruptcy filing would not change the effect of the lapse in Industrial Bank's financing statement as between it and Firstrust.

Industrial Bank does not contend that a controlling federal interest overrides state law. Rather, it argues that longstanding policy embodied in federal bankruptcy law establishes the point in time in a bankruptcy case at which the determination is made. "[V]alid liens existing at the time of the commencement of a bankruptcy proceeding are preserved." *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 738 (1931) (citing *Ex parte Christy*, 44 U.S. 292 (1845)). As stated by the Second Circuit, "in general no creditors' liens acquire validity after the filing of the petition . . . . It should equally follow, we believe, that liens good at this time do not lose their validity as against the trustee, unless the statute so expressly provides.'" *Lockhart v. Garden City Bank & Trust Co.,* 116 F.2d 658, 661 (2d Cir. 1940). This principle, which many courts

refer to as the "freeze rule," dictates that security interests are determined as of the petition date. As will be shown, the freeze rule has been applied to perfection of security interests as well as their validity.

Before turning to a further discussion of the freeze rule, it is necessary to address a change in the UCC that is central to the dispute in this case. As Firstrust points out, a prior version of the UCC tolled the effectiveness of the financing statement during a bankruptcy case. Previously, §9-403(2) provided, as pertinent here:

> If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of 60 days or until the date when it otherwise would have lapsed, whichever occurs later.

§9-403(2) (LexisNexis1999) (repealed 2001). Under this provision, the security interest "remains perfected" during the case and no continuation statement needed to be filed. This provision was removed when revised §9-515, quoted above, was adopted by Maryland.

Firstrust argues that the elimination of the tolling provision formerly in §9-403(2) evidences a legislative intent to override the rule that security interests are determined as of the petition date, at least for security interests governed by the UCC. It argues, therefore, that a lapse in a financing statement now has the same effect inside of bankruptcy as outside of bankruptcy.

Firstrust's argument suffers from two flaws. First, Comment 4 to §9-515 addressed the removal of the tolling provision in former §9-403(2):

> Effect of Debtor's Bankruptcy. Under former section 9-403(2), lapse was tolled if the debtor entered bankruptcy or another insolvency proceeding. Nevertheless, being unaware that insolvency proceedings had been commenced, filing offices routinely removed records from the files as if lapse had not been tolled. Subsection (c) deletes the former tolling provision and thereby imposes a new burden on the secured party: to be sure that a financing

7

> statement does not lapse during the debtor's bankruptcy. The secured party can prevent lapse by filing a continuation statement, even without first obtaining relief from the automatic stay. See Bankruptcy Code Section 362(b)(3). *Of course, if the debtor enters bankruptcy before lapse, the provisions of this Title with respect to lapse would be of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of the filing of the bankruptcy petition).*

§9-515 cmt. 4 (LexisNexis 2018) (emphasis added). Thus, the drafters of the UCC left to the courts to decide whether the security interest should be determined as of the petition date or the date of lapse. The point, however, is that Comment 4 makes clear that the revision to the UCC was not intended to take that determination away from the courts under bankruptcy law.

The second flaw is that the freeze rule has been routinely applied in cases to which the former §9-403(2) did not apply, either because they were decided before §9-403(2) was adopted, they addressed liens governed by the UCC but not subject to §9-403(2), or they addressed non-UCC liens. The application of the freeze rule in these cases undermines Firstrust's argument that the elimination of former §9-403(2) was intended to override the freeze rule.

A leading case is *General Electric Co. v. Halmar Distributors, Inc. (In re Halmar Distributors, Inc.)*, 968 F.2d 121 (1st Cir. 1992). There, the First Circuit considered a dispute between two secured creditors over the distribution of proceeds of collateral from a bankruptcy estate. The bankruptcy court and district court ruled that the creditor that was junior as of the petition date took ahead of the creditor that was senior as of that date. The First Circuit reversed.

In *Halmar Distributors*, prior to the petition, General Electric filed appropriate financing statements in New York establishing its senior secured position in inventory of the debtor. Subsequently, but before the petition, the debtor entered into a financing arrangement also covering inventory with BayBank, which filed financing statements in both New York and Massachusetts. Some two months before the petition, the debtor moved all inventory to

8

Massachusetts. Under the UCC, when a borrower transfers property from one state to another, the security holder must file a new financing statement in the transferee state within four months. *Id.* at 124. General Electric did not file a financing statement in Massachusetts covering that inventory until four days beyond the four-month period. BayBank argued that, although General Electric held the senior position at the time the petition was filed, it lost that position because it failed to file the new financing statement within four months of the move. The bankruptcy and district courts agreed.

> The First Circuit reversed:

> > Additional notice to the bank in the form of refiling within the four-month period was as unnecessary and useless an act as can be imagined. Refiling is intended to protect parties in entirely different circumstances. We see no need to apply the rule here when to do so would give an unjustified advantage to a party…. On the basis of the bank's actual knowledge alone, we would be inclined to reverse the ruling of the district court and bankruptcy judge.

*Id.* at 126. The bankruptcy court rejected applying §9-403(2) because that section only applied to the five-year period for filing and not the four-month period when assets are moved to a different state. The First Circuit viewed the question of whether §9-403(2) applied as beside the point:

> The [debtor's] bankruptcy filing was notice to creditors and would be purchasers. The predecessor to section 9-403(2) did not contain an express provision tolling the period to file a continuation statement when a bankruptcy petition had been filed. Nevertheless, courts recognized that when the parties are involved in insolvency proceedings, the trustee and existing creditors gain knowledge of the perfected security interest on the date the bankruptcy petition is filed. Consequently, filing a continuation statement served no purpose as to those parties.

*Id*. The court concluded that the bankruptcy filing tolled the period within which General Electric was required to file a financing statement in Massachusetts. Therefore, General Electric remained in the senior secured position.

An often cited case is *In re Chaseley's Foods, Inc.*, 726 F.2d 303 (7th Cir. 1983). As pertinent here, the court addressed the effect of a secured creditor's failure to file a continuation statement during a bankruptcy case. The court stated:

> [t]he "notice" purpose of the continuation statement requirement is not served once a bankruptcy petition is filed. The only parties which can possibly be injured by failure to file a continuation statement once a bankruptcy proceeding is pending are creditors who obtain their liens after the financing statement expires. However, because the trustee takes possession of the debtor's property once a petition is filed, and this possession is open and notorious, these creditors should not need the protection of a continuation statement.

*Id.* at 308.

Further, the bankruptcy court had noted that Indiana failed to adopt §9-403(2), indicating "an intent that the creditor maintain the perfection of its interest through the affirmative act of [filing the continuation statement]." *Id*. at 309. The court reversed the bankruptcy court. It noted that the adoption of §9-403(2) was "not a substantial change in the law":

> Thus, a refiling of a security interest after the filing of a bankruptcy petition would serve no useful purpose since the rights of prepetition creditors and the trustee in bankruptcy were fixed at the time of the filing of the petition. The express recognition of this principle by [states that have adopted] § 9–403(2) does not confer any greater rights upon a trustee in bankruptcy than those which existed prior to the amendment. *A bankruptcy proceeding eliminated the need for further refiling; both before and after the amendment of § 9–403(2).*

*Id.* (quoting *In re Delia Brothers, Inc.,* 1980 WL 98474 (Bankr. S.D.N.Y. 1980) (emphasis added)). The court also reviewed the Comments that were issued when §9-403(2) was adopted by the American Law Institute in 1972. The Comments noted that "the prevailing line of decisions is to the effect that the situation is frozen at the moment of bankruptcy without an obligation to refile." *Id.* (quoting the American Law Institute Comments on Official Reasons for the 1972 change). The court concluded that the Comment suggests "that holdings which require

10

a continuation statement to be filed are incorrect and that the change is made to rectify any misconception." *Id*.

The Fourth Circuit Court of Appeals has recognized the soundness of the *Chaseley's Foods* decision, albeit in an unpublished per curiam opinion. *Flebotte v. Northern (In re Fletcher Woods, Inc.)*, 887 F.2d 1079 (4th Cir. 1989) (unpublished table decision) (per curiam) (where a creditor who held a senior lien in real estate as of the petition date cancelled and then re-recorded the deed of trust post-petition, the court applied the rule that rights of creditors are fixed as of the petition date, granting the creditor a first position lien despite the cancellation). Many other courts recognize the freeze rule outside of the confines of former §9-403(2). *See, e.g.*, *In re Bond Enterprises, Inc.* 54 B.R. 366 (Bankr. D.N.M. 1985) (The critical time for determining the respective rights of the debtor and its creditors is the date of the filing of a petition. The adoption of §9-403(2) was not intended to reflect a change in the law, but merely to clarify it.); *In re Paul*, 67 B.R. 342 (Bankr. D. Mass. 1986) (applying the freeze rule in the context of real estate attachment). Although the majority of courts that have addressed the issue recognize the rule, some courts disagree. *See, e.g.*, *In re 800 Bourbon Street, LLC*, 541 B.R. 616, 626 (Bankr. E.D. La. 2015) ("There is no language to support a finding that under the Bankruptcy Code a creditor's rights are frozen on the petition date excusing it from maintaining its secured position during the administration of the case for purposes of an objection to claim.").

The court finds *Halmar, Chaseley's Foods, Delia Brothers*, and similar cases persuasive.[4] Moreover, the origin of the freeze rule was not the former §9-403(2). The policy considerations that led to the application of the freeze rule before §9-403(2) was adopted or in cases in which §9-403(2) did not apply – including lien disputes not governed by the UCC – remain equally

---

[4] Further, although the *Fletcher Woods* decision is unpublished and *per curiam*, the court cannot ignore the views of the Fourth Circuit.

valid after §9-403(2) has been revoked. This conclusion is supported by the statement in the Comment that a post-petition lapse would be "of no effect to the extent that federal bankruptcy law dictates a contrary result (e.g., to the extent that the Bankruptcy Code determines rights as of the date of the filing of the bankruptcy petition)." §9-515 cmt. 4. Rather, the reason §9-403(2) was repealed is explained in the Comment: "Nevertheless, being unaware that insolvency proceedings had been commenced, filing offices routinely removed records from the files as if lapse had not been tolled." *Id.*

To be sure, the exclusion of the bankruptcy trustee from the definition of a "purchaser of the collateral for value" in §9-515(c) eliminates the need for the application of the freeze rule in a dispute between the debtor and a single secured creditor. A secured creditor whose financing statement lapses during the case nevertheless comes ahead of the debtor under §9-515(c). Moreover, when a lien, valid as of the petition date, became ineffective during the case, courts were faced with the question of whether the freeze rule barred the trustee from avoiding a lien under the strong arm provisions of 11 U.S.C. §544. The majority of courts did not allow avoidance. *See In re Fletcher Woods,* 887 F.2d at *3. For financing statements that lapsed during the case, the issue did not exist while former §9-403(2) was in effect because the effectiveness of the financing statement was tolled. It now seems clear that, because a trustee in bankruptcy is a "lien creditor" and not a "purchaser of the collateral for value," §9-515(c) does not allow a trustee to avoid a lien where the financing statement has lapsed post-petition. In this case, because the Chapter 11 trustee has not sought to avoid Industrial Bank's lien due to the lapse, the issue is not before the court. Nevertheless, the exclusion of the bankruptcy trustee from §9-515(c) appears to resolve the avoidance issue. But merely because the application of the

12

UCC reaches the same result that would be obtained under the freeze rule in some cases does not mean the freeze rule is no longer vital.

The parties have cited two cases decided after §9-403(2) was removed from the UCC that address the effect of a post-petition lapse in the financing statement of a senior security interest holder vis-a-vis a junior security interest holder.  In *In re Wilkinson*, No. 10-62223, 2012 WL 1192780 (Bankr. N.D.N.Y. 2012), the court considered whether, under New York law,[5] a properly filed financing statement preserved a creditor's lien position where the creditor failed to file a continuation statement and the original financing statement expired post-petition.  A junior lien creditor argued that by removing the tolling provision in §9-403(2), the legislature intended that creditors file continuation statements during bankruptcy proceedings.  *Id.* at *4.  Specifically, the creditor focused on the "new burden" language in the Comment 4 to §9-515, asserting that the amendment created a new burden on creditors to file continuation statements during bankruptcy proceedings in order to preserve its lien position.  *Id.*  The court rejected the junior lien creditor's argument, pointing out that its reading of the official comments ignored the language that where a debtor enters bankruptcy prior to a financing statement's lapse, the statute would have no effect to the extent it conflicts with bankruptcy law.  *Id.*  The court continued:

> While a creditor's priority, vis-à-vis other creditors, is determined by state law, as [the junior lien creditor] correctly asserts, the relevant question in light of an intervening bankruptcy is one of timing—at what temporal period should the bankruptcy court determine the parties' respective interests? As did the court in *In re Bond Enterprises, Inc.* [54 B.R. 366 (Bankr. D. N.M. 1985)], this Court unequivocally finds itself in agreement with the majority position, which freezes the parties' position as of the date of filing, believing that to conclude otherwise would upset a fundamental tenet of bankruptcy that property interests are determined as of the petition date.

*Id.*  This court agrees with the holding and rationale of *Wilkinson.*

---

[5] The pertinent portions of N.Y. U.C.C. Law §9-515 mirror §9-515.

Firstrust relies on *Highland Constr. Mgmt. Servs. v. Wells Fargo, N.A.* (*Highland II*), 497 B.R. 829 (Bankr. E.D. Va. 2013). That court described the issue before it, and its holding, as follows:

> This is a case where there is a contest between a single secured party [whose financing statement lapsed during the bankruptcy case] and the debtor in possession who has the powers of a trustee. The secured creditor's security interest has priority over the debtor's interest.

*Id*. at 843. The court originally decided the issue in favor of the debtor. *In re Highland Constr. Mgmt. Servs., LP*, 2013 WL 1336918, (Bankr. E.D. Va. March 29, 2013). On reconsideration, the court ruled in favor of the secured creditor.

*Highland II* appears to be a straightforward application of both the freeze rule and §9-515(c). Section 9-515(c) provides that upon lapse, a financing statement ceases to be effective and the security interest is deemed never to have been perfected as against a "purchaser of the collateral for value." §9-515(c). There was no "purchaser of the collateral for value" in the case. Under the UCC, the lapse in the financing statement does not result in the security interest deemed never to have been perfected as against a "lien creditor." The term "lien creditor" includes a "trustee in bankruptcy from the date of the filing of the petition." §9-102(53). Thus, by application of §9-515(c), the post-petition lapse in the financing statement did not allow the trustee to move ahead of the secured creditor. This would be the same result under the freeze rule.

This court agrees with the holding that the security interest continues to be effective after the lapse vis-à-vis the debtor. There was no junior secured creditor in the case and no need for the court to address the issue in dispute here. The decision goes on to state, however, that the "one exception" would be a prepetition junior secured creditor, who "would take priority over the creditor with the lapsed financing statement." *Highland II,* 497 B.R. at 843. While this court

14

respects the views of the *Highland II* court, it declines to adopt this latter statement.  The statement is admittedly *obiter dictum* ("but in this case there is no such creditor.").  Further, while this court agrees that the statement is an accurate description of the result outside of bankruptcy under §9-515(c), it disagrees that this is the result in bankruptcy under the freeze rule.  Because the dispute in *Highland II* could be resolved readily under the current version of the UCC, the historic application of the freeze rule in cases to which the UCC did not apply took a back seat in the court's statement concerning the effect a lapse would have on a nonexistent junior creditor.

Finally, Firstrust places great weight on the 1994 amendment to the Bankruptcy Code that excepted from the automatic stay an act "to maintain or continue the perfection of" an interest in property.  11 U.S.C. §362(b)(3) (1994) (Pub. L. 103–394, §204(a), inserted ", or to maintain or continue the perfection of," after "to perfect").  It argues the amendment is further evidence that the freeze rule was abrogated when former §9-403(2) was eliminated from the UCC.  But §9-403(2) provided that the security interest remained perfected until termination of the bankruptcy case "and thereafter for a period of 60 days or until the date when it otherwise would have lapsed, whichever is later." §9-403(2).  With the elimination of §9-403(2), the secured creditor lost the 60-day post-bankruptcy protection for the lapsed financing statement.  It is therefore prudent for the secured creditor to file the continuation statement during the case to protect against the risk that the case will be dismissed or the debtor will otherwise exit bankruptcy, or, for that matter, that a court might not adopt the majority view.  But because the current 11 U.S.C. §362(b)(3) *allows* a creditor to file a continuation statement does not mean the creditor is *required* to file the continuation statement.  *See also, In re Peake*, 2018 WL 3946169, *10 (Bankr. N.D. Ill. 2018) (explaining the purposes of 11 U.S.C. §362(b)(3)).  *See also, Toranto*

*v. Dzikowski*, 380 B.R. 96, 100 (S.D. Fl. 2007) ("But on its own terms §362(b)(3) does not require a creditor to do anything.  It merely provides that certain actions to maintain or continue a [lien] are exempted from the automatic stay.").

## Conclusion

For the foregoing reasons, the court will grant Industrial Bank's motion for summary judgment and deny Firstrust Bank's cross-motion.

cc:  all parties
     all counsel

**END OF MEMORANDUM OF DECISION**